In re MARRIAGE OF PAUL RINK, Petitioner-Appellee, and MARY ANN RINK, a/k/a Mary Ann Theis, Respondent-Appellant.

First District (3rd Division)   No. 83—1356

Opinion filed August 28, 1985.

Linda S. Kagan, of Chicago (Maureen J. McGann-Ryan, of counsel), for appellant.

Schiller, De Canto & Fleck, of Chicago (Donald C. Schiller, Belle Lind Gordon, and Terry J. Finman, of counsel), for appellee.

JUSTICE McGILLICUDDY delivered the opinion of the court:

The respondent, Mary Ann Theis, appeals from portions of a judgment for dissolution of marriage entered on November 15, 1982, and modified on May 12, 1983. The respondent contends that the trial court abused its discretion (1) in classifying certain bank accounts held by the parties in joint tenancy as nonmarital property of the petitioner, Paul Rink; (2) in failing to award respondent rehabilitative maintenance or unallocated family support; (3) in requiring the petitioner to pay only $500 per month in child support for the parties' minor child; (4) in setting the visitation schedule of the minor child to allow the child to spend alternate Sundays and alternate weekends with the petitioner, and (5) in requiring the respondent to pay her own attorney fees.

The parties were married on March 17, 1979. One child was born of the marriage. The parties lived together until November 1980, when petitioner left the marital home and filed a petition for dissolution of marriage. The grounds were not contested and are not at issue in this appeal. A trial was held in July 1982. A judgment for dissolution of marriage was entered on November 15, 1982, and a supplemental judgment for dissolution of marriage was entered on May 12, 1983.

Petitioner has been blind since birth and was 35 years old at the time of trial. He was employed as an attorney by the Continental Illi-

nois National Bank and Trust Company of Chicago at an annual salary of $39,000. Prior to his marriage, petitioner lived at home with his parents and had accumulated substantial assets. At the time of the trial, petitioner lived alone in an apartment on South Michigan Avenue at 11th Street in Chicago. He testified that his monthly expenses totalled $1,835 and that his net monthly salary was $1,900.

Respondent was 35 years old and unemployed at the time of trial. Prior to her marriage, she had worked for three years as a bookkeeper/accountant at Lutheran General Hospital at an annual salary of approximately $10,000. Respondent had a bachelor's degree from Mundelein College and had been employed as a teacher from 1970 to 1973. She testified that she left her job at her gynecologist's suggestion when she was three months pregnant. At the time of trial, she had not resumed employment. She testified that her child was an active 27-month-old boy who needed her full-time attention and that various health problems precluded her from returning to work. She did not plan to resume full-time employment until her son started school.

The respondent and her son were living with her parents in a two-bedroom house and her family contributed to the child's support. Respondent testified that she could not afford to rent her own apartment with the amount of temporary maintenance she received from the petitioner during their separation. She testified that she needed approximately $6,000 for dental work that was begun during her pregnancy but postponed until after the birth, and $9,500 for a new car. Her monthly expenses were approximately $300, with an additional $65 every eight weeks for the child's pre-school and gym class. Respondent had her own life insurance, but she and her son were covered under petitioner's health insurance. At the time of trial, respondent had approximately $2,600 on deposit at various banking institutions, and had debts of approximately $1,800, excluding her dental bills.

At issue in the trial was the determination whether three bank accounts were marital or nonmarital property. Prior to his marriage, petitioner had held bank accounts in joint tenancy with his mother. He testified that this was solely for convenience, as he found it difficult to physically complete banking transactions unaided. His mother testified that she was not the owner of any of the funds in the accounts and that the cotenancy was established so that she could take care of petitioner's banking in case of an emergency or illness.

In June 1979, petitioner withdrew $30,000 from one of these joint accounts and opened an account in his name at Bell Federal Savings and Loan Association (Bell), and, in December 1979, transferred the

account at Bell to the names of Paul Rink and Mary Ann Theis Rink. He also maintained a savings account of $14,000 at the Continental Illinois National Bank and Trust Company (Continental) in joint tenancy with his wife, which funds had previously been held in joint tenancy with his mother. In June 1979, petitioner opened a joint account with the respondent with approximately $2,600 in funds from a savings account he had owned prior to the marriage. In September 1980, petitioner withdrew the funds from the Bell and Continental accounts and purchased a U.S. Treasury Note in his name alone.

Petitioner testified that he had established the accounts in joint tenancy with his wife for the sake of convenience, that he never intended to give her an ownership interest in the accounts, that he had never allowed her to make a withdrawal and that she did not have access to the passbooks. Respondent testified that she and her husband had discussed using the money in the accounts to make a down payment on a house and that they had spent some time househunting during their marriage.

In the judgment for dissolution of marriage entered on November 15, 1982, the trial court found that the disputed bank accounts and the treasury note purchased with the funds therefrom were nonmarital property. Respondent was awarded the bank accounts in her name and the property in her possession. The court further found that the respondent had failed to prove a basis for limiting petitioner's visitation rights with his son. The visitation schedule provided that the petitioner had visitation rights on alternate Sundays, alternate weekends, two weeks during the summer, petitioner's birthday and alternate child's birthday, Father's Day and alternate legal holidays. Petitioner was ordered to have present during visitation a sighted person of his choice until the child was four years old. Respondent was awarded no maintenance but was awarded $400 per month child support. Each party was held liable for its respective attorney fees.

A supplemental judgment for dissolution of marriage was entered on May 12, 1983. Insurance coverage for the respondent and the child was detailed and child support was increased to $500 per month. Respondent's request that petitioner contribute to her attorney fees was denied, as were the other requests for relief in her motion for reconsideration. The court stated that respondent was entitled to a hearing on the issue of attorney fees, but none was subsequently requested.

Respondent first contends that the trial court erred in finding that the bank accounts petitioner opened in joint tenancy during the marriage were his nonmarital property. Although there is a legislative preference for classifying property as marital under the Illinois Mar-

riage and Dissolution of Marriage Act (the Act) (Ill. Rev. Stat. 1979, ch. 40, par. 101 *et seq.*), our supreme court has recognized the legislative intent to preserve the character of nonmarital property where the actions of the parties have not created ambiguity in that regard. *In re Marriage of Smith* (1981), 86 Ill. 2d 518, 427 N.E.2d 1239; *In re Marriage of Wojcicki* (1982), 109 Ill. App. 3d 569, 440 N.E.2d 1028.

■ Nonmarital property may, however, be presumptively transmuted to marital property. The placing of title to nonmarital property in joint tenancy with a spouse raises a presumption that a gift was made to the marital estate and the property becomes marital property. (*Atkinson v. Atkinson* (1981), 87 Ill. 2d 174, 429 N.E.2d 465, *cert. denied* (1982), 456 U.S. 905, 72 L. Ed. 2d 162, 102 S. Ct. 1751; *In re Marriage of Smith* (1981), 86 Ill. 2d 518, 427 N.E.2d 1239; *In re Marriage of Emken* (1981), 86 Ill. 2d 164, 427 N.E.2d 125; *In re Marriage of Rogers* (1981), 85 Ill. 2d 217, 422 N.E.2d 635.) In dissolution proceedings, the "donor" spouse may rebut the presumption of gift with clear, convincing and unmistakable evidence. *In re Marriage of Wojcicki* (1982), 109 Ill. App. 3d 569, 440 N.E.2d 1028; *In re Marriage of Severns* (1981), 93 Ill. App. 3d 122, 416 N.E.2d 1235; *In re Marriage of Wingader* (1981), 95 Ill. App. 3d 9, 419 N.E.2d 611.

■ The distribution of marital property rests within the sound discretion of the trial court and will not be reversed absent an abuse of discretion. An abuse of discretion occurs where no reasonable man would take the view adopted by the trial court. (*In re Marriage of Shafer* (1984), 122 Ill. App. 3d 991, 462 N.E.2d 39; *In re Marriage of Wojcicki* (1982), 109 Ill. App. 3d 569, 440 N.E.2d 1028.) In the instant case, the trial court found that petitioner had overcome the presumption of marital property and that the bank accounts in question were held in joint tenancy solely for purposes of convenience because he was blind. After a review of the record, we affirm the court's characterization of the bank accounts as nonmarital property. Petitioner's evidence was sufficiently clear, convincing and unmistakable to rebut the presumption of gift. The court did not abuse its discretion.

Respondent also maintains that the trial court abused its discretion in refusing to award her rehabilitative maintenance or unallocated family support. Section 504(a) of the Act sets forth the standard for determining whether an award of rehabilitative maintenance is warranted. It provides that maintenance should be awarded only if (1) the spouse seeking maintenance lacks sufficient property to provide for her reasonable needs *and* (2) is unable to support herself through appropriate employment or is the custodian of a child whose condition mandates that the custodian not be required to seek employment out-

side the home, or (3) is otherwise without sufficient income. Ill. Rev. Stat. 1979, ch. 40, par. 504(a).

It is clearly established that the necessity for maintenance is a decision within the sound discretion of the trial court which will not be reversed unless contrary to the manifest weight of the evidence. (*In re Marriage of Bentivenga* (1982), 109 Ill. App. 3d 967, 441 N.E.2d 336; *In re Marriage of Lovejoy* (1980), 84 Ill. App. 3d 53, 404 N.E.2d 1092.) Where maintenance is at issue, the statutory factors listed in section 504(b) must be considered. Included are the relative financial status of the parties, the standard of living established during marriage, the duration of the marriage and the physical condition of both parties. *In re Marriage of Smith* (1979), 77 Ill. App. 3d 858, 396 N.E.2d 859.

The trial court found that respondent in the instant case was possessed of marketable skills and able to work and contribute toward support of the minor child. The respondent supported herself for nine years prior to her marriage to the petitioner. There was presented no evidence that the problems which required her to leave her employment while she was pregnant have continued. The court specifically noted that the parties had lived together for only 17 months and that petitioner had paid temporary maintenance and child support for an additional 23 months. Further, petitioner testified that his monthly expenses were $1,835 out of a monthly salary of $1,900. A party is entitled to maintenance based not only on his own needs, but also on the comparative ability of the other party to pay. (*In re Marriage of Wisniewski* (1982), 107 Ill. App. 3d 711, 437 N.E.2d 1300.) The court's finding was consistent with the evidence presented at trial. We decline to overturn it.

Respondent next contends that the $500 per month awarded for the support of the minor child is inadequate. She maintains that this award is insufficient in light of sections 505(a)(3) and 505(a)(5) of the Act, which require the court to consider, among other factors, the standard of living the child would have enjoyed had the marriage not been dissolved and the financial resources and needs of the noncustodial parent. Ill. Rev. Stat. 1979, ch. 40, pars. 505(a)(3), 505(a)(5).

In Illinois, financial responsibility for the support of a child is the joint obligation of both parents. (*In re Marriage of Edelstein* (1980), 82 Ill. App. 3d 574, 403 N.E.2d 323.) The amount of the award is within the discretion of the trial court and will not be disturbed on appeal absent an abuse of that discretion. (*In re Marriage of Dwan* (1982), 108 Ill. App. 3d 808, 439 N.E.2d 1005; *In re Marriage of Rizzo* (1981), 95 Ill. App. 3d 636, 420 N.E.2d 555.) There is nothing in

the record to support respondent's contention that the court failed to consider the relevant factors when it awarded her $500 per month for child support. Based on all the circumstances of this case and a review of the record, we find no abuse of discretion in that determination.

■ Respondent also contends that the visitation schedule set by the court should be modified. Petitioner was granted visitation with his son on alternate weekends from Saturday morning until Sunday evening and all day Sunday on the other weekends. A trial court has broad discretion in ordering visitation of children with their parents, and such a determination should not be modified on review unless there is manifest injustice to a parent or child. *In re Marriage of Brophy* (1981), 96 Ill. App. 3d 1108, 421 N.E.2d 1308; *In re Marriage of Lawver* (1980), 82 Ill. App. 3d 198, 402 N.E.2d 430.

■ The respondent attempted to establish at trial that her son had suffered injuries while visiting his father. She admitted, however, that she had never sought medical treatment for these injuries. The petitioner testified that any reddish marks on his son's face following visitation were the result of rubbing against his father's beard stubble while playing. Petitioner's parents both testified that the child had never suffered any injury during visitation with petitioner. Although the visitation schedule ordered by the trial court is not to respondent's liking, we do not find it to be manifestly unjust, nor do we find that it poses any danger to the child. We therefore decline to modify the trial court's visitation schedule.

Finally, respondent contends that the trial court erred in ordering each party to pay its respective attorney fees. The allowance of attorney fees in a divorce action is within the sound discretion of the trial court, and its determination will not be overturned unless the court has clearly abused its discretion. *Hofmann v. Hofmann* (1983), 94 Ill. 2d 205, 446 N.E.2d 499.

■ Attorney fees are the primary responsibility of the person for whom the services are rendered. (*In re Marriage of Jacobson* (1980), 89 Ill. App. 3d 273, 411 N.E.2d 947; *In re Marriage of Sanborn* (1979), 78 Ill. App. 3d 146, 396 N.E.2d 1192.) An individual seeking fees from the other party to a dissolution proceeding must prove that he or she is unable to pay the fees and must demonstrate the ability of the other party to pay the fees. (*In re Marriage of Brophy* (1981), 96 Ill. App. 3d 1108, 421 N.E.2d 1308; *In re Marriage of Jacobson* (1980), 89 Ill. App. 3d 273, 411 N.E.2d 947.) It is not an abuse of discretion to fail to award attorney fees where a party has failed to so prove. *Hofmann v. Hofmann* (1983), 94 Ill. 2d 205, 446 N.E.2d 499.

Moreover, it is well established in Illinois that in order to support a grant of attorney fees, evidence must be heard as to the items of service, the basis of the amount requested or the reasonableness of the fees for such services. (*In re Marriage of Jacobson* (1980), 89 Ill. App. 3d 273, 411 N.E.2d 947; *Murphy v. Murphy* (1975), 31 Ill. App. 3d 321, 334 N.E.2d 779, *appeal denied* (1975), 61 Ill. 2d 598.) In the instant case, respondent's counsel was granted the opportunity for a hearing on the reasonableness of the fees. No hearing was apparently ever requested. The trial court did not abuse its discretion in requiring each party to pay his or her own attorney fees.

For the foregoing reasons, the judgment of the circuit court of Cook County is affirmed.

Affirmed.

WHITE, P.J., and RIZZI, J., concur.