*In re* MARRIAGE OF MARJORIE ORLANDO, Petitioner-Appellee, and ANTHONY T. ORLANDO, Respondent-Appellant.

First District (3rd Division)   Nos. 1—89—3032, 1—90—0322 cons.

Opinion filed August 7, 1991.

---

*Justice White participated in this opinion prior to his retirement.

John D. Kightlinger, of Mt. Prospect, for appellant.

Neil A. Robin, of Chicago (Paul R. Jenen, of counsel), for appellee.

JUSTICE GREIMAN delivered the opinion of the court:

The respondent, Anthony Orlando (Anthony), appeals from portions of a judgment for dissolution of his marriage to petitioner, Marjorie Orlando (Marjorie). Anthony contends that the circuit court erred in (1) classifying certain assets (*i.e.*, a certificate of deposit and stock) as Marjorie's nonmarital property; (2) allocating two-thirds (66.7%) of the marital property to Marjorie and one-third (33.3%) to Anthony; (3) ordering Anthony to pay $242 per month for spousal support and maintenance; (4) requiring Anthony to pay Marjorie's attorney fees; and (5) supplementing its judgment after 30 days. In addition, Marjorie submits that this court should reconsider our denial of her motion to dismiss this appeal.

For the reasons which follow, we reverse the circuit court's decision regarding the classification of a certificate of deposit and stock and find that these assets are marital property. We affirm the circuit court's judgments on all of the other issues raised. We also find that this court has jurisdiction to hear this appeal and decline to reconsider our previous denial of Marjorie's motion to dismiss the appeal.

Anthony and Marjorie were married in 1947, separated in 1985, and divorced in 1989. Two sons, Douglas and Christopher, were born during their marriage. At the time of their divorce, Anthony was 61 years old, Marjorie was 60 years old, Douglas was 32 years old and emancipated, and Christopher was 16 years old.

Marjorie testified that after high school she worked for three months as a secretary and then married Anthony. Marjorie worked either full time or part time until the birth of her younger son, Christopher, in 1972. Marjorie did not have outside employment from 1972 through 1984. During the last three years, 1986-1989, Marjorie was fired from 8 to 12 jobs. Her highest gross annual income was $10,000.

Marjorie further testified that since 1985 she has been receiving medical treatment for back problems which limit her ability to sit for more than 20 hours a week at a job. At times she wears a steel brace to relieve the back pain. Additionally, in December 1988 Marjorie was diagnosed with diverticulitis which was controlled, but not cured, by antibiotics and thus remains an ongoing concern.

Since 1987 Marjorie has been receiving treatment from a psychologist, Dr. Donald Gorsline, who testified as to Marjorie's mental condition and diagnosed Marjorie as having a borderline personality disorder. Over the years, Dr. Gorsline has increased his time spent with

Marjorie from once a week to twice a week and then three times per week. Dr. Gorsline testified that Marjorie's mental disorder is affecting her ability to find or keep a job but opined that she could function fairly normally within two to three years. Dr. Gorsline recommended part-time employment of no more than four hours a day for Marjorie at this time.

Anthony testified that he has a college degree in accounting and has been doing accounting work for 30 years. For the last 10 years Anthony has been employed by Commons-Allison Incorporated as the director of corporate taxes and earns a gross annual salary of $44,000. In addition Anthony receives a bonus calculated on the company's profits. He received $1,000 as a bonus for the years of 1987 and 1988 but received no bonus for the previous eight years. Anthony also supplements his income by preparing tax returns for outside clients and friends.

The following list represents the assets of Anthony and Marjorie as determined by the circuit court:

Marital Property

| | |
|---|---|
| Family Home (equity) | $210,000.00 |
| 1988 Buick (equity) | 3,500.00 |
| 1982 Reliant car and 1976 car | (no equity) |
| IRA | 2,000.00 |
| 401-K | 6,225.02 |
| TOTAL | 221,725.02 |

Marjorie's Nonmarital Property

| | |
|---|---|
| Keystone stock | 4,678.92 |
| Certificate of Deposit | 18,000.00 |
| TOTAL | 22,678.92 |

The Keystone stock was inherited by Marjorie from her father, and the stock was subsequently put into joint tenancy with Anthony. In 1972, Marjorie's father died and the Keystone stock was divided three ways: one-third to Agnes Miller (Marjorie's mother), one-third to Marjorie's sister (Marilyn), and one-third to Marjorie. In 1978, Agnes Miller transferred her one-third stock share equally to Marjorie and Marilyn. Marjorie testified that she first saw the stock certificates in joint name with Anthony in 1979, a fight ensued with Anthony, and she executed the necessary paperwork out of fear of her husband. Anthony testified that Marjorie voluntarily transferred the stock into joint tenancy to avoid any probate problems if Marjorie should die.

The stock at issue today is the same stock which Marjorie received from her father in 1972 and it has remained in joint tenancy since 1978 or 1979.

Marjorie's mother, Agnes Miller, had a $30,000 certificate of deposit which was to pass to Marjorie when Agnes died. However, in 1974, Agnes, while still alive, gave $15,000 from the certificate of deposit to Marjorie which was used by Marjorie toward the purchase of her previous marital home with Anthony. In 1981, when Agnes died the remaining $15,000 certificate of deposit passed to Marjorie. Anthony testified that he put the $15,000 in joint accounts. Neither Anthony nor Marjorie made any subsequent contributions to the certificate of deposit but the interest on the certificate of deposit was put into a marital account for expenses before their separation. After their separation, Marjorie transferred the certificate of deposit into Christopher's name alone to prevent Anthony from accessing those funds. Marjorie currently uses some of the interest for living expenses.

The trial court found that Anthony's net monthly income is $2,487. His monthly required payments amount to $1,511 for the following obligations: mortgage ($685); child support ($486); Marjorie's health insurance ($98) and maintenance ($242). Anthony testified that he lives with his older brother in an apartment and voluntarily pays virtually all of their expenses.

On October 10, 1989, the circuit court entered the judgment for dissolution of marriage. Marjorie was granted custody of Christopher, and they were given the right to remain in the marital home until Christopher graduated from high school. Three months after Christopher's graduation from high school (i.e., September 1991), the marital home is to be sold and the net proceeds are to be divided 66.7% to Marjorie and 33.3% to Anthony.

The judgment for dissolution of marriage also provided, in relevant part, that: (1) the marital property would be divided two-thirds (66.7%) to Marjorie and one-third (33.3%) to Anthony; (2) Anthony would pay to Marjorie $242 per month for spousal support and maintenance until December 15, 1991; and (3) the stock and certificate of deposit received from Marjorie's parents were nonmarital assets.

Marjorie also filed a petition for attorney fees. Following a December 29, 1989, hearing on her petition, the circuit court ordered Anthony to pay $6,031 to her attorneys.

Initially we address Marjorie's contention that this court should reconsider its October 24, 1990, order denying her motion to dismiss this appeal on the grounds that this court did not have the record or

her reply to Anthony's objection to her motion when we ruled. We find Marjorie's arguments unpersuasive and decline to reconsider our denial of her motion to dismiss.

Anthony first asserts that the circuit court erred in classifying the certificate of deposit and the Keystone stock as nonmarital property. We agree.

The Illinois Marriage and Dissolution of Marriage Act (Act) creates the presumption that all property acquired during marriage is marital property, including nonmarital property transferred into some form of co-ownership between the spouses. (Ill. Rev. Stat. 1989, ch. 40, par. 503(b).) Property acquired by gift, legacy or descent is excepted from marital property and is classified as nonmarital property. Ill. Rev. Stat. 1989, ch. 40, par. 503(a)(1).

The placing of title to nonmarital property in joint tenancy with a spouse raises a presumption that a gift was made to the marital estate and the property becomes marital property. (*In re Marriage of Rink* (1985), 136 Ill. App. 3d 252, 257, 483 N.E.2d 316.) However, in *Rink* this court recognized the legislative intent to preserve the character of nonmarital property where the actions of the parties have not created ambiguity in that regard. Accordingly, the "donor" spouse may rebut the presumption of gift with clear, convincing and unmistakable evidence. *Rink*, 136 Ill. App. 3d at 257.

Cases which have found that the evidence was sufficient to rebut the presumption of gift are distinguishable from the present case. Where the wife's nonmarital funds were acquired by inheritance but were not deposited into a joint bank account or applied toward the purchase of a jointly owned home, the court held that the wife presented sufficient evidence to overcome any presumption of gift to the marriage. (*In re Marriage of Simmons* (1981), 101 Ill. App. 3d 645, 428 N.E.2d 1032.) In *Rink*, this court affirmed the classification of certain bank accounts opened in joint tenancy during the marriage to be the husband's nonmarital property where the husband, who was blind, testified that he never intended to give his wife an ownership interest in the accounts, never allowed her to make a withdrawal, and never gave her access to the passbooks. (*In re Marriage of Rink* (1985), 136 Ill. App. 3d 252, 483 N.E.2d 316.) The sole purpose for joint tenancy of the bank accounts in *Rink* was convenience because of the husband's disability. Also, in *In re Marriage of Guerra* (1987), 153 Ill. App. 3d 550, 505 N.E.2d 748, the husband rebutted the presumption of gift where he had kept nonmarital stock acquired prior to the marriage separate after the marriage; he and his wife controlled and used separate bank accounts; the spouses separated their finan-

cial affairs and dealt at arm's length; and clear evidence existed when the husband had intended to give gifts to the wife, such as a car titled in her name alone.

Marjorie primarily relies on *In re Marriage of Wojcicki* (1982), 109 Ill. App. 3d 569, 440 N.E.2d 1028, which held that the property at issue was nonmarital because no gift was intended. We find *Wojcicki* factually distinguishable.

The *Wojcicki* case involved a second marriage for both parties and each spouse entered into the marriage with substantial property. This second marriage lasted about four years. The dispute concerned real property which had been acquired by the husband many years before his second marriage. The husband purchased a Schaumburg residence 15 years before his second marriage and held his Wisconsin property 21 years before his second marriage. The husband, who had emigrated from Poland and had a limited education, encountered difficulties in clearing title in these properties after the death of his first wife. Accordingly, the husband testified that he transferred the property into joint tenancy with his second wife to avoid similar difficulties in the event of his or his second wife's death. However, the wife contended that the husband intended to convey a present interest in the properties to her. The *Wojcicki* court considered numerous factors to be significant including the intent of the parties; payment of the purchase price, taxes and mortgage; making improvements on the property; occupancy of the premises; and the exercise of control and management of the property.

In light of the statutorily created presumption of gift regarding all property acquired during marriage and nonmarital property transferred into co-ownership with a spouse, the presumed intent of a gift as to property placed in joint tenancy with a spouse, and the high standard of proof required to rebut the presumption of gift, we find that the stock and certificate of deposit in this case should be classified as marital property. The marital property presumption was formed when Marjorie's inherited assets were transferred into joint tenancy with Anthony, and the evidence does not support the trial court's finding that these assets retained their character as Marjorie's nonmarital property.

Since the record contains sufficient facts to enable us to order a redistribution, we do not need to remand the matter to the trial court to reexamine its distribution. (*In re Marriage of Madoch* (1991), 212 Ill. App. 3d 1007, 571 N.E.2d 1029.) We direct that the stock and the certificate of deposit be classified as marital property and that the value of these assets ($22,678.92) be allocated in the same proportion

as the other marital property, *i.e.*, two-thirds to Marjorie ($15,119.28) and one-third to Anthony ($7,559.64).

Second, Anthony contends that the trial court abused its discretion by dividing the marital property with two-thirds (66.7%) to Marjorie and one-third (33.3%) to Anthony. We disagree.

On appeal, a property division can be disturbed only upon a showing of an abuse of discretion. (*In re Marriage of Partyka* (1987), 158 Ill. App. 3d 545, 550, 511 N.E.2d 676.) An abuse of discretion occurs where no reasonable person would take the view adopted by the trial court. (*Partyka*, 158 Ill. App. 3d at 550.) A reviewing court is not justified in substituting its discretion for that of the trial court. *In re Marriage of Jones* (1989), 187 Ill. App. 3d 206, 222, 543 N.E.2d 119; *In re Marriage of Wolf* (1989), 180 Ill. App. 3d 998, 1004, 536 N.E.2d 792.

Section 503(d) of the Act directs the court to divide the marital property in "just proportions" and to consider all relevant factors including the value of the property set apart to each spouse, the duration of the marriage, the economic circumstances of each spouse upon the division of the property, the reasonable opportunity of each spouse for future acquisition of capital assets and income, and each spouse's age, health, employability and sources of income. Ill. Rev. Stat. 1985, ch. 40, par. 503(d).

Courts have repeatedly and consistently held that the "just proportions" requirement does not mandate an equal division of marital property but an equitable division. (*Jones*, 187 Ill. App. 3d at 223.) The touchstone of apportionment of marital property is whether the distribution is equitable, and each case rests upon its own facts. *Jones*, 187 Ill. App. 3d at 222.

The record reveals that under the facts of this case the trial court properly considered the relevant statutory factors, and we find no abuse of discretion. Similar cases have reached the same result. *In re Marriage of Gentry* (1989), 188 Ill. App. 3d 372, 544 N.E.2d 435 (no abuse of discretion was found in awarding 66% of assets to the wife, who had a limited education and had been a homemaker, thus removed from the work force, for nearly 20 years); *In re Marriage of Agazim* (1988), 176 Ill. App. 3d 225, 530 N.E.2d 1110 (a 76/24 division of assets in favor of the wife was upheld where the husband was the principal wage earner throughout the marriage and the wife's wage-earning capacity as an ice-skating teacher was hampered by physical injuries); *In re Marriage of Hanson* (1988), 170 Ill. App. 3d 298, 303, 524 N.E.2d 695 (after a 28-year marriage, a 70/30 distribution of assets in favor of the 49-year-old wife was upheld because the

court found a vast difference in future earning capacities of the parties where the wife was entering her fifties, had no job experience in over 20 years, and had poor employment prospects); *In re Marriage of Kristie* (1987), 156 Ill. App. 3d 821, 510 N.E.2d 14 (following a 36-year marriage, no abuse of discretion was found where the wife was awarded 62.2% of the assets and the husband was awarded 37.8%); *In re Marriage of Lord* (1984), 125 Ill. App. 3d 1, 465 N.E.2d 151 (the court found adequate support to award 60% of the property to the wife given the length of the marriage (24 years) and the wife's more limited opportunity for future acquisition of assets since she worked as a secretary and earned less than $1,000 a month); *In re Marriage of McNeeley* (1983), 117 Ill. App. 3d 320, 453 N.E.2d 748 (following a 32-year marriage, there was no abuse of discretion in awarding approximately 60% ($112,400) of the assets to the wife and 40% ($76,600) to the husband where the 53-year-old wife was only a high school graduate with three weeks of secretarial training, suffered from arthritis, and had not been employed since she got married).

A nearly equal apportionment of marital assets, *i.e.*, approximately 50% to each spouse, was reversed and remanded for reconsideration of the property distribution award because the court concluded that the wife had not received an equitable share of the assets. (*In re Marriage of Campise* (1983), 115 Ill. App. 3d 610, 450 N.E.2d 1333.) The court in *Campise* specifically noted the wife's age (51), educational background (a high school graduate), extended absence from the work force (14 years), poor physical health (back and neck problems) which prevents her from sitting in one position for any extended period of time, and consultations with a psychiatrist. In contrast, the husband in *Campise* had both full-time and part-time employment which afforded him a greater opportunity to acquire capital assets and income. Similarly, this court reversed the marital property division where we found that the trial court had not adequately taken into account the parties' past earnings and potential to accumulate future income. (*Partyka*, 158 Ill. App. 3d at 554-55.) In *Partyka*, the husband had an advanced degree, enjoyed steady employment for over 14 years, and earned a yearly salary of as much as $138,000. The wife, in contrast, had remained at home to raise the children during the marriage and was earning only $44 per day as a substitute teacher.

The Orlandos' marriage lasted for 42 years, and each spouse is now over 60 years old. While Anthony worked throughout the marriage, Marjorie was unemployed for 12 years. Anthony is currently employed while Marjorie has been discharged from about 12 jobs in

the last three years. Anthony's current annual salary is $44,000, and the highest gross annual income Marjorie ever earned was $10,000. Anthony acquired a college degree in accounting, and Marjorie has a high school education. Anthony testified that he is in good health. In contrast, Marjorie suffers from physical as well as emotional problems. Given the facts of this case, we believe that the trial court rendered an equitable and conscientious decision in apportioning the marital property between the spouses.

Third, Anthony asserts that payment of spousal support and maintenance in the amount of $242 per month is unreasonable when considered in the context of his total financial situation. Anthony acknowledges that the maintenance and child support awards by themselves are not excessive. We find that the maintenance award in this case is proper.

Like a property division, an award of maintenance is within the discretion of the trial court, and it will not be disturbed by a reviewing court unless there is an abuse of discretion or a determination that the award is against the manifest weight of the evidence. (*Jones*, 187 Ill. App. 3d at 227.) An abuse of discretion will occur where no reasonable man would take the view adopted by the trial court. (*Jones*, 187 Ill. App. 3d at 227.) The trial court's determination as to maintenance is presumed to be correct. *Kristie*, 156 Ill. App. 3d 821, 510 N.E.2d 14.

Section 504 of the Act governs the granting of a maintenance award. (Ill. Rev. Stat. 1985, ch. 40, pars. 504(a), (b).) To award maintenance the court must find that the spouse seeking maintenance lacks sufficient property to provide for his reasonable needs, is unable to support himself through appropriate employment, or is otherwise without sufficient income. (Ill. Rev. Stat. 1985, ch. 40, par. 504(a).) Maintenance may be awarded in any amount and for any time period which the court deems just after considering all relevant factors including, *inter alia*, the financial resources of the party seeking maintenance, his ability to meet his needs independently, the duration of the marriage, the age and the physical and emotional condition of both parties, and the ability of the spouse from whom maintenance is sought to meet his needs while meeting those of the spouse seeking maintenance. Ill. Rev. Stat. 1985, ch. 40, par. 504(b).

Maintenance may be appropriate where a spouse has little prospect of earning sufficient income to meet her needs, even if she is employed. (*Kristie*, 156 Ill. App. 3d at 823 (the court upheld a permanent maintenance award to a wife who had been employed for 10 years).) The paying spouse's net income is a factor to be considered in

determining the amount of maintenance. (*Kristie*, 156 Ill. App. 3d at 823.) An amount equal to approximately 10% of the paying spouse's income is reasonable. *In re Marriage of Pahlke* (1987), 154 Ill. App. 3d 256, 507 N.E.2d 71 (the court upheld a maintenance award of $150 per month where the paying spouse had a net monthly income of $1,450).

■ Courts have found that time-limited maintenance is appropriate where the evidence indicates future employability, encourages a spouse to become self-sufficient, and affords the court an opportunity to review the award at the end of a fixed period. *Jones*, 187 Ill. App. 3d at 229.

■ In the present case, the judgment of dissolution provides that Anthony will make monthly maintenance payments in the amount of $242, which constitutes less than 10% of his monthly net income ($2,487), and that the maintenance provisions will be reviewed on December 15, 1991. Clearly the time-limited maintenance award is scheduled for review following the high school graduation of their son Christopher, the sale of the marital home, which is set for September 1991, and Marjorie's anticipated further recovery from psychological disorders which impede her ability to enter the job market and to be self-sufficient. The record reveals that the trial judge considered the statutory criteria regarding an award of maintenance and acknowledged that the interim arrangement would be a "stiff bill" for Anthony but that his problems are short term. We find that the trial court did not abuse its discretion in awarding two-year maintenance payments to Marjorie.

Fourth, Anthony contends that the trial court erred in ordering him to pay Marjorie's attorney fees on the grounds that the fees were not proven by sufficient evidence and Marjorie has a greater ability than he to pay the fees. There is no dispute regarding the reasonableness of the hourly rates charged.

Generally, each party has the primary obligation to pay his own attorney fees but the court has discretion to award fees. (*Pahlke*, 154 Ill. App. 3d at 263.) Section 508 of the Act provides that the court, after considering the financial resources of the parties, may order a spouse to pay a reasonable amount for the costs and attorney fees necessarily incurred by the other spouse. (Ill. Rev. Stat. 1985, ch. 40, par. 508.) The allowance of attorney fees rests within the sound discretion of the trial court and that discretion will not be disturbed unless it is clearly abused. *McNeeley*, 117 Ill. App. 3d at 329.

Anthony primarily relies on *Kaiser v. MEPC American Properties, Inc.* (1987), 164 Ill. App. 3d 978, 518 N.E.2d 424, to support his

assertion that insufficient evidence was presented to determine the legal services performed and the time required. The *Kaiser* case involved a petition for attorney fees filed by a lessor which prevailed in the underlying action to enforce a commercial lease agreement. The *Kaiser* court held that a fee award must be predicated on sufficiently detailed information as to the bases for the legal charges and thus disallowed portions of the bill which noted only vague and general descriptions of legal tasks performed.

In addition to adequately detailed records, a court may rely on its own knowledge and experience in determining the value of legal services and the amount of a fee to be awarded. *In re Marriage of Angiuli* (1985), 134 Ill. App. 3d 417, 423, 480 N.E.2d 513, cited with approval in *Kaiser*, 164 Ill. App. 3d at 984, 518 N.E.2d at 427.

Following a hearing on the petition for fees, the trial court expressly found that the amount of time expended was reasonable and sufficiently limited to allow a finding on the information provided. The trial court then entered judgment for $6,031, which represented approximately 87% of the fees requested ($6,937.35).

■ We believe that the record, including a summary of the fees and the attorney's testimony at the hearing on the petition for fees, reveals that sufficient evidence was provided to substantiate the trial court's finding as to the amount of attorney fees awarded.

Where one spouse is in a superior position to acquire income and additional capital assets, a fee award does not constitute an abuse of discretion. (*McNeeley*, 117 Ill. App. 3d at 330.) In *Pahlke*, the court upheld the fee award which required the husband to pay approximately 95% of the wife's attorney fees. (*In re Marriage of Pahlke* (1987), 154 Ill. App. 3d 256, 507 N.E.2d 71.) Like Marjorie, the wife in *Pahlke* had limited resources, no income-producing assets, and uncertain employment prospects. Like Anthony, the husband in *Pahlke* had a stable earnings history and a greater ability to acquire future assets.

Similarly, a husband can be responsible for the full amount of a wife's attorney fees where she would have to deplete part of her principal if she were required to pay attorney fees. (*In re Marriage of Kusper* (1990), 195 Ill. App. 3d 494, 500, 552 N.E.2d 1023.) Financial inability to pay attorney fees does not mean destitution, but that the payment would strip the spouse of her means of support and undermine her financial stability. (*In re Marriage of Osborn* (1990), 206 Ill. App. 3d 588, 602, 564 N.E.2d 1325.) The *Osborn* court held that the husband should absorb the wife's attorney fees where the wife, like Marjorie, received a majority (72%) of the marital assets, did not

work outside the home for 11 years, and was unemployed at the time of the divorce.

In light of the parties' economic circumstances, we find that the trial court's decision to have Anthony pay Marjorie's attorney fees was reasonable and not an abuse of discretion.

Fifth, Anthony maintains that the trial court erred in entering an order on January 10, 1990, which clarified a provision of the judgment of dissolution entered on October 10, 1989. Anthony submits that the trial court lost jurisdiction 30 days after the entry of the October 1989 order and Marjorie's motion should have conformed to the requirements of section 2—1401 of the Code of Civil Procedure (Ill. Rev. Stat. 1987, ch. 110, par. 2—1401).

■ A court has inherent authority over the enforcement of its judgments. (*Adam Martin Construction Co. v. Brandon Partnership* (1985), 135 Ill. App. 3d 324, 326, 481 N.E.2d 962; *Klier v. Siegel* (1990), 200 Ill. App. 3d 121, 127, 558 N.E.2d 583 (" 'That judicial power essentially involves the right to enforce the results of its exertion is elementary,' " quoting *Virginia v. West Virginia* (1918), 246 U.S. 565, 591, 62 L. Ed. 883, 886, 38 S. Ct. 400, 402; see also *Comet Casualty Co. v. Schneider* (1981), 98 Ill. App. 3d 786, 424 N.E.2d 911 (the trial court had full power to entertain enforcement proceedings after the dismissal and passage of 30 days from the rendition of the consent decree); *Cities Service Oil Co. v. Village of Oak Brook* (1980), 84 Ill. App. 3d at 384-85 ("Illinois law is clear that the court has power to compel compliance with its orders and to punish for failure to do so").) Even though the subject matter jurisdiction of a court generally is lost and its final decree in a civil case is a conclusive adjudication after 30 days from its entry, the court in a dissolution proceeding retains jurisdiction for the purpose of enforcing its judgments. *In re Marriage of Redmer* (1982), 111 Ill. App. 3d 317, 320, 443 N.E.2d 1075.

■ The judgment of dissolution specifically ordered Anthony to pay Marjorie's "outstanding medical bills as of the entry of Judgment for Dissolution of Marriage [October 10, 1989], which are approximately $2,300.00." At the December 28, 1989, hearing on Marjorie's fee petition, the trial court observed that no time period had been set for the payment of the $2,300 for outstanding medical bills. Thereafter Marjorie filed a motion with the trial court to set a specific date for payment by Anthony. When the proceedings reconvened on January 10, 1990, the trial court addressed Anthony's nonpayment of the $2,300 in medical expenses and ordered that this sum be paid out of

Anthony's share of the proceeds from the future sale of the marital home.

We find that Anthony's obligation to pay the $2,300 was clearly delineated in the judgment of dissolution, and the trial court had the power to compel Anthony to comply with the judgment.

Judgment affirmed in part; reversed in part and remanded with directions.

CERDA, P.J., and WHITE,* J., concur.

---
*Justice White concurred with this opinion prior to his retirement.