*In re* MARRIAGE OF SUZANNE HEAD, Petitioner-Appellee, and HENRY HEAD, Respondent-Appellant.

First District (2nd Division)    No. 1—92—3949

Opinion filed June 30, 1995.

John G. Cadwell, of Chicago, for appellant.

Kanter & Mattenson, Ltd., of Chicago (Stuart Gordon and David M. Mattenson, of counsel), for appellee.

JUSTICE McCORMICK delivered the opinion of the court:

Respondent Henry Head appeals from a judgment entered after our remand of this cause. (*Head v. Head* (1988), 168 Ill. App. 3d 697, 523 N.E.2d 17 (*Head I*).) The sole issue on retrial was the value of Henry's medical practice for the purpose of the distribution of marital assets. The trial court found that the medical practice was worth $76,920, which consisted of $58,000 in tangible assets and $18,920 in intangible assets. The trial court also awarded petitioner Suzanne Head $47,679 in attorney fees. Henry challenges both of these findings. We modify the trial court's finding relative to the value of Henry's medical practice and affirm the award of attorney fees.

Prior to *Head I*, the trial court had found, pursuant to a stipulation by the parties, that Henry's interest in the tangible assets of the professional corporation was valued at $58,000. Henry argued that his interest in the tangible assets of the professional corporation constituted the sole value of his medical practice. Suzanne presented expert testimony that the practice was worth $515,000 based upon a "capitalization of earnings" valuation method. The trial court rejected Suzanne's valuation, but ruled that considering Henry's level of skill in the subspecialty of gastroenterology, as well as the above average earnings of his practice (which he shared with two other doctors), the value of the medical practice was $175,000.

In *Head I*, we held that the $117,000 in excess of the $58,000 in tangible assets applied by the trial court was based solely upon Henry's ability to acquire income, also called "professional goodwill."[1] Section 503(d) of the Illinois Marriage and Dissolution of Marriage Act (Dissolution Act) (Ill. Rev. Stat. 1985, ch. 40, pars. 503(d)(7), (d)(10)) requires the court to consider the sources of income and earning power of the spouses in apportioning the total marital assets between the parties. Section 504(b)(1) of the Dissolution Act (Ill. Rev. Stat. 1985, ch. 40, par. 504(b)(1)) provides for awards of maintenance, based, *inter alia*, on the future earning capacity of the parties. We held that it was improper to value the professional goodwill of the corporation both in the valuation of the medical practice as an asset and again as potential income for the purpose of apportioning the total marital assets and awarding maintenance. We therefore remanded the cause "for further proceedings as to the division of the marital assets consistent with the views expressed" in the opinion. *Head*, 168 Ill. App. 3d at 704.

On remand, Suzanne prepared to present expert testimony that a

---

[1]Case law, which respondent relies upon in the case at bar, characterizes this ability as "professional goodwill." *In re Marriage of Zells* (1991), 143 Ill. 2d 251, 256, 572 N.E.2d 944; *In re Marriage of Courtright* (1987), 155 Ill. App. 3d 55, 58-59, 507 N.E.2d 891.

medical practice can have value above that of its tangible assets that is not based upon the professional goodwill of the practitioner. Because this intangible assets value, which Suzanne's expert later identified as "enterprise goodwill," is not premised upon the income potential of the professional, Suzanne argued that it is divisible marital property under section 503(d) of the Dissolution Act. Henry filed a motion *in limine* seeking to exclude evidence of the intangible assets value, relying on our statement in *Head I* that "the value of tangible assets is a proper basis for valuation of a medical practice." (*Head*, 168 Ill. App. 3d at 700.) Henry urged the trial court to value his medical practice at $58,000, the value of the tangible assets.

The trial court denied Henry's motion, ruling that *Head I* only restricted it from considering evidence of goodwill if that evidence included future earning potential. The trial court, without referring to the goodwill either as professional or enterprise goodwill, agreed with Suzanne that to the extent that evidence of goodwill did not include future earning potential, the court was required to consider it as part of the valuation of the practice. According to the trial court, an example of the goodwill it could consider would be "the value of the professional corporation if the Respondent were to sell his interest in the corporation and then leave the corporation without giving a covenant not to compete." The trial court reasoned that this value might "arise from or be based, in part, upon the location of the [medical] office, the transferrable affiliation of the practice, the administrative facilities of the practice, and/or a patient list." The trial court further supported its ruling based on its observation that this court had stated only that tangible assets was "a," as opposed to "the," proper basis for valuing a professional corporation, and ruled that it would permit Suzanne to present expert testimony valuing Henry's practice using a capitalization of earnings method so long as it did "not in any way reflect the future earnings" of Henry. The trial court further ruled that this court's opinion in *Head I* was not *res judicata* of any reconsideration of the value of the practice above tangible assets because neither the trial court nor this court had considered the issue of goodwill, excluding Henry's earning capacity.

Subsequent to the trial court's order, but prior to retrial, our supreme court issued *In re Marriage of Zells* (1991), 143 Ill. 2d 251, 572 N.E.2d 944, in which it held, as we did in *Head I*, that professional goodwill could not be considered in the valuation of a professional business:

> "Adequate attention to the relevant factors in the Dissolution Act results in an appropriate consideration of professional goodwill as an aspect of income potential. The goodwill value is then reflected in the maintenance and support awards. Any additional consider-

ation of goodwill value is duplicative and improper." (*Zells*, 143 Ill. 2d at 256.)

Pursuant to *Zells*, Henry filed a renewed motion *in limine* seeking to exclude consideration of any goodwill in the valuation of his practice, again urging the trial court to fix the value of his practice based upon his $58,000 stipulated interest in the tangible assets of the professional corporation. The trial court continued this motion, and the parties went to trial on the issue of the value of the medical practice, which included Suzanne's evidentiary presentation of goodwill.

James J. Unland, an expert in medical practice transactions, testified on behalf of Suzanne. His conclusions were based on an excess net cash flow methodology, which is equal to the return to a dispassionate investor after subtracting overhead and physicians' salaries from revenues. Unland testified that the transferrable value in a medical practice is the goodwill of the practice. According to Unland, all goodwill is enterprise goodwill. He acknowledged that his definition of enterprise goodwill could include, depending on the circumstances, the earning capacity of the professional. The trial court informed Unland that, under *Zells*, such earning capacity was not to be considered in valuing the enterprise goodwill of Henry's practice. Unland thereupon calculated the enterprise goodwill of Henry's practice by attempting to exclude Henry's earning capacity and including, among other things, its tangible assets; its size; its affiliation with Northwestern University; and the transferability of its patient base. Unland concluded that the enterprise goodwill in Henry's share of the practice was $510,000.

The trial court ruled that Suzanne had established that a medical practice has a cash value beyond the tangible assets and the earning potential of the professional; however, it also found that Unland's testimony had failed to establish that value without taking into consideration Henry's earning potential. Thus, the trial court rejected Unland's evaluation. Although conceding in its order that there was an "absence of evidence" on the intangible value of Henry's medical practice, the trial court nevertheless ruled that it was not precluded from finding such a value. The trial court stated that its task was "to place a value [on the practice] that is large enough to be at least moderately realistic, yet small enough so that in no way will it conflict with our supreme court's concern regarding double-counting." The trial court concluded that "[s]uch a value, to meet the above standards, should be between one-third and two-thirds of Henry's income at the time. Therefore, the value is set at fifty (50%) percent of Henry's 1983 income *** , being $153,840.00 divided by 2 equals

$76,920.00." In light of its valuation, the court decided not to change the remaining property division or maintenance provisions, but merely reduced Henry's share of the marital estate.

Henry claims that our mandate in *Head I* restricted the trial court from considering enterprise goodwill. He asserts that our statement that tangible assets was "a proper basis" upon which to value a medical practice (*Head*, 168 Ill. App. 3d at 702, 704) limited the trial court on remand to finding that the practice was worth $58,000 and calculating any necessary adjustments to the distribution of the marital assets. Suzanne insists that this court's mandate was one which directed the trial court to arrive at the correct value of the practice, using any appropriate methodology, tangible assets being one of those methodologies.

■ The findings of this court are final on all questions actually decided. (*Zokoych v. Spalding* (1980), 84 Ill. App. 3d 661, 667, 405 N.E.2d 1220.) When this court remands a case with specific instructions, they must be followed exactly. (*Aguilar v. Safeway Insurance Co.* (1991), 221 Ill. App. 3d 1095, 582 N.E.2d 1362.) However, when the remand instructions are general, the trial court must examine this court's opinion and exercise its discretion to determine what further proceedings are required. *In re Marriage of Sunko* (1992), 237 Ill. App. 3d 996, 606 N.E.2d 29.

■ In *Head I*, our remand instructions directed the trial court to conduct further proceedings consistent with the opinion. We held that the trial court had improperly valued Henry's medical practice due to double-counting of future income. We also noted that tangible assets was "a" proper method of valuation. We agree with the trial court's reasoning that "a" proper method does not constitute "the" proper method, and that our lack of specificity rendered the question of the valuation methodology open and the valuation itself a question of fact that could be relitigated. (*Callier v. Callier* (1986), 142 Ill. App. 3d 407, 414, 491 N.E.2d 505.) If we intended to limit the trial court's consideration, we would have so stated. Furthermore, if we found that the tangible assets methodology was the only appropriate one, we would have simply modified the trial court's judgment to reflect that the value of Henry's practice was $58,000. The purpose of the remand was to enable the trial court to correctly value the practice, not to quibble over the methodology.

■ Henry next cites our supreme court's statement in *Zells*, that "[g]oodwill represents merely the ability to acquire future income" (*Zells*, 143 Ill. 2d at 254), to argue that consideration of any goodwill in a professional concern is inappropriate and that tangible assets must be the valuation method. This is an overly broad reading of

*Zells. Zells*, like *Head I*, simply provides that professional goodwill, if used as a factor of income potential in considering maintenance and support, cannot be used as a divisible marital asset. *Zells* does not restrict the valuation of a professional corporation beyond its tangible assets as long as a party can establish that value apart from earning potential. Henry mischaracterizes the *Zells* court's statement about "goodwill." That court was not presented with the concept of enterprise goodwill, which is goodwill that is distinct from professional goodwill, at least as that term has been defined in our cases. (See *In re Marriage of Talty* (1995), 166 Ill. 2d 232.) Thus, *Zells* did not restrict the trial court in this case.

Nonetheless, we conclude that the trial court's valuation of the practice was unsupported in the record. As we have indicated, the trial court found Henry's practice to be worth $76,920. The parties stipulated that the tangible assets of the practice were worth $58,000. Thus, included in the trial court's valuation of Henry's practice is the additional sum of $18,920, representing the intangible value of the practice not related to income potential. Although the trial court did not specifically use the term "enterprise goodwill," our review of Unland's testimony, as well as the trial court's order valuing Henry's practice, indicates that the $18,920 represents enterprise goodwill, and we analyze it as such.

Although our supreme court has recently stated that the goodwill of a professional practice "is generally personal in nature" (*In re Marriage of Talty*, 166 Ill. 2d at 239), the court has not yet reviewed a case in which a trial court has been presented, as was the trial court here, with evidence of the enterprise goodwill of such a practice. Thus, *In re Marriage of Talty* does not foreclose consideration of enterprise goodwill in professional practices. Indeed, no Illinois court has addressed, in light of *Zells*, the issue of whether a professional association possesses goodwill independent of the earning potential of the practitioner. We have reviewed the decisions of courts from other jurisdictions. We note the lack of a consensus as to the existence of enterprise goodwill in a professional practice, defined as any value of the practice as a going concern, independent of the tangible assets and the income potential of the practitioner. (*In re Marriage of Talty*, 166 Ill. 2d at 238-39.) Beyond even the theoretical existence of enterprise goodwill in a professional practice also lies the issue of whether its value is susceptible of proof. See, *e.g., Spillert v. Spillert* (Fla. 1990), 564 So. 2d 1146, 1148 (court stated that it would consider enterprise goodwill in valuing medical practices, but stressed that "proof of such valuation may be extremely difficult").

Two recent court opinions portray the range of disagreement on

the subject. In *Traczyk v. Traczyk* (Okla. 1995), 891 P.2d 1277, 1279, the Oklahoma Supreme Court held that enterprise goodwill, valued as "the expectation of continued public patronage" in the event of the sale of a professional business, multiplied by the annual revenue of the firm, had been established in a podiatry practice. Conversely, in *Bostwick v. Bostwick* (Del. Fam. Ct. 1991), _____ A. 2d _____, a trial court rejected altogether the existence of enterprise goodwill in an accounting practice because it concluded that any method used to obtain the enterprise value of the practice was based, in part, on the earning potential of the professional or based on speculation, such as in assuming that when a professional sells a business, he will execute a covenant not to compete. That is to say, the court in *Bostwick* believed that because no method of valuation can approximate enterprise goodwill, it does not exist.

The facts and circumstances revealed in the record before us do not permit us to conclude whether the concept of enterprise goodwill, as we have defined it, is valid or not. Like other reviewing courts which have faced this issue, we acknowledge that on appropriate proof, enterprise goodwill may be susceptible of valuation. (*Traczyk v. Traczyk*, 891 P.2d at 1280; *Antolik v. Harvey* (1988), 7 Haw. App. 313, 761 P.2d 305; *Prahinski v. Prahinski* (1988), 75 Md. App. 113, 540 A.2d 833; *Wilson v. Wilson* (1987), 294 Ark. 194, 741 S.W.2d 640.) However, the record on appeal makes it palpably clear that no such value has been proven in this case.

James Unland's testimony as to the aspects of a medical practice that can be transferrable, such as hospital affiliation and patient list, certainly bespeak a value independent of the earning potential of the practitioner. However, like the trial court, we fail to see, in Unland's net-excess-cash-flow calculation, an exclusion of that earning potential. Thus, the trial court correctly found an "absence of evidence" establishing enterprise goodwill value in Henry's practice. This should have ended the trial court's inquiry, and it should have fixed the value at the proven figure of $58,000 in tangible assets.

However, despite the absence of evidence, the trial court stated that it was not precluded from finding a value for enterprise goodwill and assessed it in the amount of $18,920. In the absence of an evidentiary basis for that valuation, the trial court should not have determined the value of enterprise goodwill. When the record contains conflicting evidence regarding the value of a professional corporation, a trial court's selection of a value somewhere between the opposing values in evidence is not considered arbitrary or against the manifest weight of the evidence. (*In re Marriage of Bush* (1989), 191 Ill. App. 3d 249, 258, 547 N.E.2d 590.) However, the trial court

may only *do* so when the conflicting values are based on evidence supported by a proper foundation. (*Bush*, 191 Ill. App. 3d at 258.) In this case, the trial court did not choose between two opposing values, both supported by proper evidence. The trial court rejected Unland's valuation because it included consideration of Henry's earning potential, which is barred under *Zells*. Somehow, the trial court concluded that Suzanne had established that medical practices have some unproved intangible value. The trial court further determined that the excess cash value of Henry's practice was "fifty (50%) percent of Henry's 1983 income ***, being $153,840.00 divided by 2 equals $76,920.00." Subtracting the $58,000 in stipulated tangible assets from this figure leaves the $18,920 in dispute. We find the trial court's calculation to be speculative, arbitrary and without basis in the record. The only properly proven value of the medical practice that did not consider Henry's earning potential is the $58,000 in tangible assets. Therefore, pursuant to Supreme Court Rule 366(a)(5) (134 Ill. 2d R. 366(a)(5)), we modify the trial court's judgment to reflect this conclusion and we reduce Henry's share of the marital estate accordingly.

■ Henry next challenges the trial court's award to Suzanne of attorney fees in the amount of $47,679. Henry claims this was improper because, under *Head I* and *Zells*, retrial should not have been conducted in this case and was only had at the behest of Suzanne. We disagree. The trial court properly exercised its discretion in retrying the issue of practice valuation. Under *Zells*, as well as our decision in *Head I*, the issue of enterprise goodwill remained an open question. Suzanne's failure to establish enterprise goodwill does not negate the fact that it was a reasonable issue to litigate in the trial court.

Although a party is generally responsible for his own fees, a trial court retains discretion to award fees. (*In re Marriage of Orlando* (1991), 218 Ill. App. 3d 312, 322, 577 N.E.2d 1334.) Section 508 of the Dissolution Act provides that the trial court, after considering the financial resources of the parties, may order a spouse to pay a reasonable amount of the costs incurred by the other spouse. (Ill. Rev. Stat. 1985, ch. 40, par. 508.) This court will only reverse such a determination upon a clear abuse of discretion. *Orlando*, 218 Ill. App. 3d at 322.

Where one spouse has a superior ability to acquire income and superior capital assets, a fee award is not an abuse of discretion. (*Orlando*, 218 Ill. App. 3d at 323.) Furthermore, this court has held that one spouse can be ordered to pay all of the other spouse's fees if a depletion of principle would result from requiring the latter to pay

the fees. (*Orlando*, 218 Ill. App. 3d at 323.) A financial inability to pay does not require that a party be destitute, but merely that the payment of fees would "strip the spouse of [a] means of support and undermine *** financial stability." *Orlando*, 218 Ill. App. 3d at 323.

As we recognized in *Head I*, Henry's annual income, as well as his ability to earn income in the future, dwarfs Suzanne's. The trial court stressed that Suzanne had little discretionary income and that in order to pay her fees she would have to "invade capital," precisely the action *Orlando* stressed was not required. As in *Orlando*, in light of the parties' economic circumstances, the trial court's award was not an abuse of discretion.

Judgment modified in part; affirmed in part.

CAMPBELL, P.J., and DiVITO, J., concur.