*In re* MARRIAGE OF SUSAN CUTLER, Petitioner-Appellee, and DAVID E. CUTLER, Respondent-Appellant.

Fifth District    No. 5—01—0347

Opinion filed October 22, 2002.

John J. Kurowski and William D. Shultz, Jr., both of Kurowski, Bailey & Shultz, P.C., of Swansea, for appellant.

Rhonda D. Fiss, of Belleville, for appellee.

JUSTICE CHAPMAN delivered the opinion of the court:

Susan Cutler filed an action for dissolution of marriage against her husband of approximately 20 years, David E. Cutler. After a trial, the court entered a judgment on all remaining issues. One issue was the determination of the value of David's business, the Cutler Insurance Agency (Cutler). The court valued the business at $243,000 by applying a form of the "income approach" method of valuation. This figure was then used in determining the equitable distribution of marital property. David now appeals, arguing that (1) the court's valuation of the business was against the manifest weight of the evidence and (2) this error in valuation substantially and materially affected the equitable distribution of marital property. We reverse the decision of the trial court and remand the cause with directions that $32,000 be used as the valuation of the business in the redistribution of marital property between David and Susan.

## I. FACTS

Susan filed a petition for dissolution on May 20, 1998. She and David had been married since 1979 and had one child. Grounds for the dissolution were found on February 9, 2000. At the trial on October 12, 2000, the witnesses included both of the parties, Charles Tzinberg as Susan's valuation expert, and Frank J. Reedy, Jr., as David's valuation expert. David also offered the evidence depositions of Larry McKenzie and Richard G. Eitzel, both of whom were former owners of insurance agencies tied to Geico Insurance Company (Geico).

Susan testified that she was 44 years old and worked as a regional account manager with Roche Labs. She has a bachelor of science degree in nursing. In 2000, she was expected to make approximately $97,000, which was consistent with her recent past earnings.

David testified that he was 48 years old and was employed by Cutler, earning a gross income of slightly more than $5,000 per month. The court found that his net income for the purpose of child support was $3,637 per month. David graduated from high school but never finished college. In 1973, David became a licensed insurance sales agent. He started Cutler as a proprietorship in 1988 and incorporated it in 1994. From 1988 to 2000, Cutler sold exclusively Geico insurance under an agency contract with Geico. Geico's principal product is automobile liability and comprehensive coverage. This agreement prohibited David from representing any other company without Gei-

co's written permission. In the trade, this business relationship is known as a captive agency because of the agency's exclusive arrangement with a single carrier. The contract also contained a one-year noncompetition clause prohibiting David from soliciting former Geico clients in the event of a termination of the agency contract.

David testified that he was familiar with the agreement and understood the way it worked. He added that he had discussed aspects of the agreement with a number of other Geico insurance agents throughout the country. In these discussions he learned that because of the contract terms these agencies were not marketable. He identified several agents who closed their agencies for various reasons, and none of them received funds as a result of the termination.

David also explained that under the agreement with Geico he did not own his renewals in the agency, which meant that if he left, retired, or terminated the agency for some other reason, he would not receive any commissions for ongoing business from his customers. In contrast, an agent with an independent agency would expect to own his renewals when he left.

Charles Tzinberg testified for Susan on the issue of valuation. He received a bachelor's degree from the University of Denver and has been a certified public accountant since 1988. He works for a small accounting firm and spends most of his time doing accounting work that does not involve business valuations. He admitted that there are rigorous programs where an accountant can get certifications in business valuation but that he had not taken any of those courses or obtained any of those certifications. Tzinberg testified that under the "market approach" of valuation the agency had a value of $270,000.

Tzinberg did not provide an opinion of what the fair market value of the agency would be. He also did not analyze the agreement David had with Geico, explaining that he was not qualified to determine whether the contract foreclosed the possibility of the sale of the agency. While Tzinberg agreed that Cutler is a captive agency, restricted from selling other insurance products, he determined that the agreement itself was not material to the valuation of the business.

In establishing a market value in this case, Tzinberg used a multiplier of gross revenues as a rule of thumb. After researching a variety of sources for what he considered to be comparative sales of insurance agencies, Tzinberg found multiples ranging between 1 and 1.7. He decided to apply 1.3 times gross revenues to make a conservative estimate of the value. Tzinberg admitted that this rule of thumb was based on multiline agencies, which Cutler was not. Further, one source that Tzinberg relied on specifically indicated that the business valuation should weigh the risk of losing a carrier contract with

whether there was a good mix of national, regional, and specialty-line carriers, allowing no more than 25% to 30% of a "book of business" to be with any one carrier. Tzinberg admitted that he did not factor these considerations into the valuation. He also admitted that the fact that the agency did not own its own renewals would be relevant if the business were being sold to an outside third-party buyer.

Frank J. Reedy, Jr., David's valuation expert, was then called to testify at the trial. He is both a certified public accountant and a certified valuation analyst. He spends about two-thirds of his time doing business valuations and damage measurements in legal situations and has been doing this work for more than 10 years. Additionally, he attends 40 to 60 hours of classroom instruction each year in the areas of business valuation, general accounting, and tax matters on both a local basis and a national basis. As a certified valuation analyst, he can provide business valuations for small, closely held businesses and professional practices. In order to achieve that designation, Reedy attended courses and training and passed a 48-hour examination. Reedy explained that he had performed between 100 and 200 business valuations, approximately two to four per month.

Reedy indicated that there were three commonly accepted methods used to value a closely held business such as Cutler: (1) the market approach, (2) the income approach, and (3) the "asset approach." Reedy explained that he had used detailed financial information in forming his opinion and had specifically reviewed the agreement between David and Geico because of the restrictions it imposed upon the business. After considering all three methods, Reedy concluded that the asset approach was the appropriate method for this situation. Under this method, the value of the agency was determined by subtracting the value of the business's liabilities from that of the assets. When Reedy applied this approach, he valued the agency at $32,000.

Reedy emphasized that it was significant that Cutler did not own its own book of business—the list of accounts that are expected to be renewed and be a source of future commissions. If Cutler were terminated, Geico could either place someone else in David's position or take the business directly back. David could not take that book of business to another agency or combine it with another agency because it would revert to Geico. Reedy also searched databases for comparable sales transactions for captive insurance agencies, but he did not find any that were analogous. Additionally, he explained that because future cash flow was not within the control of the agency, the income approach was not an appropriate method of valuation.

Reedy concluded that Tzinberg's market approach valuation was

improper because he did not first determine a fair market value but instead arrived at a value based upon "fair value," which is a more generalized approach. Fair value is a theoretically equitable amount rather than one derived via negotiations between two actual parties; thus, it would not consider factors such as the restrictions imposed by the Geico contract.

Both Larry McKenzie and Richard G. Eitzel testified by way of evidence deposition. McKenzie lives in Elizabethtown, Kentucky, and worked as an independent captive agent for Geico from March 1987 until July 2000. His contract with Geico was identical to David's. After he terminated his contract with Geico, he was not able to retain or own his own business or solicit or contact his former customers. McKenzie did not receive any money when he disposed of his business in 2000. He was only paid the commissions on existing renewals up to the date of his termination. He understood that, upon terminating, he had no vested rights and was unable to sell to another agent.

Richard G. Eitzel lives in Fairfax, Virginia, and worked for a captive Geico insurance agency from March 1992 until June 2000. He also worked under an agreement identical to David's agreement with Geico. He took over his business from his father. His father was not able to do anything with the business once Eitzel began handling it. When Eitzel later terminated his arrangement with Geico, he was unable to receive anything for his business.

The trial court found Cutler's value to be $243,000 and specifically stated in its order as follows: "The value of [David]'s business is determined by the capitalized[-]returns method, which the court finds reflects the most accurate value based on the continuing operation of the business by [David] with no need to sell or abandon said business in the foreseeable future." The "capitalized returns" method is one form of the income approach. The court found the total of marital assets to be $680,738. Susan got $206,802 in marital assets. The court distributed the marital home and several deferred pension assets, individual retirement accounts, and more than $25,000 in personal property to Susan and assigned her both the mortgage on the home and a $6,000 credit card debt. David got $261,936 in marital assets. The court distributed to David the value of the business, a small SEP pension, and approximately $7,300 in personal property. He was also assigned a $16,000 credit card debt. David appeals.

## II. ANALYSIS

David argues on appeal that we must remand this cause because the trial court's finding that the value of Cutler was $243,000 is against the manifest weight of the evidence and that this error in

valuation substantially and materially affected the equitable distribution of the marital property in this case. We agree and remand for a redistribution of the marital property using $32,000 as the valuation of the agency.

■ Section 503(d) of the Illinois Marriage and Dissolution of Marriage Act (750 ILCS 5/503(d) (West 2000)) states that the court shall divide marital property in "just proportions." The first step, therefore, is to establish the value of such assets. *In re Marriage of Grunsten*, 304 Ill. App. 3d 12, 17, 709 N.E.2d 597, 601 (1999). A trial court's determination of value will not be disturbed on appeal unless it is against the manifest weight of the evidence. *In re Marriage of Grunsten*, 304 Ill. App. 3d at 17, 709 N.E.2d at 601.

Cutler is a closely held corporation, with David as its only shareholder and principal. This agency is what is known as a captive agency—which means that it can sell no line of insurance other than that of its principal, Geico—as opposed to a multiline insurance agency. David's exclusive agreement with Geico restricts the business in many ways. Under the agreement, David is limited to selling only Geico automobile insurance. If he were to terminate this agency agreement, David would not own his renewals, which means that he could not obtain future commissions. Additionally, David cannot solicit his former customers for up to a year. If David were to dispose of his business, he could only transfer the Geico agency agreement with Geico's written permission. At the trial, David presented undisputed evidence, by way of his testimony and two evidence depositions, that there is simply no market for Geico insurance agencies once an agent decides to terminate the agency agreement or Geico decides to terminate the agent.

The experts who testified at the trial applied two different methods of valuation and arrived at widely divergent values for the agency. Susan's expert, Tzinberg, used the market approach method and found the agency value to be $270,000. David's expert, Reedy, used the asset approach method and found the agency value to be $32,000. The trial court, however, rejected both of those opinions and found the value to be $243,000 based on a capitalized returns method—a form of the income approach method. The only reference in the record to this amount was a passing statement made by Tzinberg, when he indicated that after determining that the value was $270,000 based on the market approach, he did a "sanity check" and applied a capitalized returns analysis, under which he found the value to be $243,000.

■ Courts of review have found it acceptable for a trial court to select a valuation between opposing values in evidence when a record contains conflicting evidence on the valuation. See *In re Marriage of*

*Head*, 273 Ill. App. 3d 404, 410, 652 N.E.2d 1246, 1251 (1995). In this instance, however, the court's decision of a valuation between $270,000 and $32,000 was both arbitrary and against the manifest weight of the evidence, because one of the conflicting values was not based on evidence supported by a proper foundation. See *In re Marriage of Head*, 273 Ill. App. 3d at 410-11, 652 N.E.2d at 1251. Tzinberg's valuation of $270,000 lacked a proper foundation. He based his valuation amount on the market approach, yet he failed to determine the fair market value of the agency. He relied instead on a rule of thumb, which was clearly inapplicable to this situation. Fair market value is generally "measured by what a willing buyer would pay a willing seller in a voluntary transaction." *In re Marriage of Grunsten*, 304 Ill. App. 3d at 17, 709 N.E.2d at 601. This approach is based on the assumption of a hypothetical sale of the business. Tzinberg, however, admitted that he did not consider a sale of Cutler. Under his method, he valued the business without taking into consideration factors that would significantly affect the sale, such as the restrictions in the Geico contract. These restrictions clearly have a significant negative impact on the fair market value of the agency. Because Tzinberg used this rule of thumb (which applied to multiline or independent agencies), rather than actually determining the fair market value of the agency, we find that his valuation was not supported by proper evidence. Thus, it was improper for the court to select a valuation between Tzinberg's and Reedy's.

■ The Illinois Marriage and Dissolution of Marriage Act clearly stipulates that all marital assets must be valued as of the date of the dissolution of the marriage. 750 ILCS 5/503 (West 2000). In *In re Marriage of Frazier*, 125 Ill. App. 3d 473, 466 N.E.2d 290 (1984), we specifically concluded that the application of the "capitalization of earnings" method was an improper way to value a business as a marital asset, because the calculation would necessarily include as marital property labor which would be performed subsequent to the dissolution. The inclusion of expected future earnings of Cutler is improper in the consideration of the distribution of marital assets in this case, and this error has produced a "grossly excessive valuation" (*In re Marriage of Frazier*, 125 Ill. App. 3d at 477, 466 N.E.2d at 293). Based on our decision in *In re Marriage of Frazier*, we find that the court's reliance on the valuation determined by the capitalized returns method was error.

Assuming, *arguendo*, that the method the court applied was proper, the court's reliance on a single cursory reference to the value of the agency, absent any evidentiary basis for the determination, was also against the manifest weight of the evidence. There is simply no basis in the record to support a valuation based upon capitalized

738

returns. Even Susan's expert, Tzinberg, stated that such a method does not apply to captive agencies and that he would not use it in this instance.

■ In contrast to both the court's valuation and Tzinberg's valuation, Reedy's valuation, determined by applying the asset approach, was supported by proper evidence. While the trial court expressly rejected $32,000 as the valuation of the agency, neither Susan nor the court disputed that figure as the asset value of the agency. We find that this was the only properly proven value of the business, and we therefore accept that as the valuation for use in the distribution of the marital property.

The net value of the marital assets involved in this dissolution case was $452,557, which included the valuation of the agency at $243,000. Because the value assigned to Cutler was over half of the net value of the marital assets, there is no doubt that the use of the erroneous valuation of the agency both substantially and materially affected the equitable distribution of marital property between Susan and David. Therefore, we remand this cause for a redistribution of the marital property.

## III. CONCLUSION

For the foregoing reasons, we reverse the decision of the trial court and remand the cause with directions that $32,000 be used as the valuation of the agency in the redistribution of marital property.

Reversed; cause remanded with directions.

WELCH and HOPKINS, JJ., concur.